UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | | |
|---|---|---|---|
| CHRIS ROBINSON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Nos: | 4:06-cr-04 |
| | ) | | 4:10-cv-65 |
| | ) | | *Collier* |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Chris Robinson ("petitioner"). The government has filed its response to the motion and petitioner has filed his reply. In addition, petitioner has filed a motion to amend the § 2255 motion. For the following reasons, the motion to amend will be **DENIED** as untimely, the § 2255 motion to vacate will be **DENIED**, and this action will be **DISMISSED**. Petitioner has also filed a motion for modification of his sentence, which will be **DENIED**.

**I.     Standard of Review**

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255,

petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II. Factual Background

Petitioner was found guilty by a jury of conspiracy to distribute five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A), and two counts of use of a communication device in furtherance of a drug trafficking offense, in violation of 21 U.S.C. § 843(b). Because he had two prior convictions for felony drug offenses, petitioner received a mandatory term of life imprisonment on the conspiracy conviction; he was also sentenced to concurrent terms of imprisonment of 48 months on each of the convictions for use of a communication device. (Court File No. 383[1], Judgment). Petitioner's convictions and sentence were affirmed on direct appeal. *United States v.*

---

[1]All references to the court record refer to Criminal Action No. 4:06-cr-04.

*Robinson*, 547 F.3d 632 (6th Cir. 2008), *cert. denied*, 558 U.S. 818 (2009). The Sixth Circuit summarized the evidence against petitioner as follows:

> A grand jury indicted Robinson for his role in a conspiracy to distribute five or more kilograms of cocaine in the Eastern District of Tennessee from December 2003 through March 2006. At trial, the primary evidence against Robinson consisted of alleged co-conspirator Juan Valentin's testimony and a series of recorded telephone conversations between Valentin and Robinson that DEA officers intercepted from Valentin's cell phone over a period of 88 days, beginning on May 5, 2005.
>
> Valentin testified that beginning in December 2003, he developed "a business relationship" with Robinson in which the two of them worked together to sell cocaine. According to Valentin, he sold cocaine to Robinson "once or twice a week" in various quantities, sometimes on credit. The quantity he most frequently sold to Robinson was four-and-a-half ounces, which Valentin described as a "regular," and the largest single quantity exchanged between them was half a kilogram. Besides purchasing and distributing cocaine, Robinson helped the conspiracy in other ways, Valentin explained. Robinson introduced Valentin to Troy Allison, who became one of Valentin's "good customer[s]" of cocaine.[1] Valentin testified that Robinson once accompanied him to Memphis, Tennessee, to pick up "a couple kilos" of cocaine.
>
> > [1]Troy Allison testified that Robinson had introduced him to Valentin. Allison purchased "a quarter kilo" of cocaine from Valentin upon meeting him and continued to buy from him after that. Allison "ultimately buil[t] up to" buying one kilogram of cocaine at a time from Valentin, with his largest single purchase being two kilograms.
>
> Most of the recorded telephone conversations consist of Robinson's ordering various quantities of cocaine.[2] But the calls reveal other aspects of Robinson's involvement with the business: Robinson twice warns Valentin about police investigation into Valentin's activities; Valentin several times asks Robinson to help collect money from individuals whom Valentin had given cocaine on credit; and Valentin on one occasion discusses with Robinson how to retrieve a safe full of cash from a car impounded by the police.

3

> ²In the 14 conversations played for the jury, Valentin and Robinson discuss a minimum total of 38-and-a-half ounces of cocaine.

*Id*. at 635-36.

In support of his § 2255 motion, petitioner alleges numerous instances of ineffective assistance of counsel. In his motion to amend the § 2255, petitioner alleges an additional instance of ineffective assistance of counsel as well as prosecutorial misconduct and violation of federal law.

## III. Discussion

### A. Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular

4

case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Petitioner alleges six instances of ineffective assistance of counsel. The Court will consider each claim in turn.

**1. Failure to seek dismissal under the Speedy Trial Act.**

Petitioner alleges his attorneys should have moved to dismiss the case based upon the violation of petitioner's statutory right to a speedy trial. This claim lacks merit.

Under the Speedy Trial Act, a defendant's trial must commence within seventy days after the date on which the indictment was filed or the date the defendant appeared before a judicial officer of the Court in which the charge is pending, whichever is later. 18 U.S.C. § 3161(c)(1). Periods of delay may be excluded from the seventy-day calculation for various reasons, including periods stemming from a continuance (provided that the Court makes a finding that the "ends of justice" served by granting a continuance outweighs the best interest

5

of the public and the defendant in a speedy trial), 18 U.S.C. § 3161(h)(7)(A), and periods during which pretrial motions are under advisement by the Court, *id.* § 3161(h)(1)(H). "[T]he filing of a pretrial motion falls with this provision irrespective of whether it actually causes, or is expected to cause, delay in starting a trial." *United States v. Tinklenberg*, 131 S. Ct. 2007, 2011 (2011).

In addition, if "multiple defendants are charged together and no severance has been granted, one speedy trial clock governs." *United States v. Cope*, 312 F.3d 757, 776 (6th Cir. 2002) (citing 18 U.S.C. § 3161(h)(7)[2]). Thus, "the excludable delay of one defendant is ascribed to that of all of his codefendants." *Id.* (citation omitted). Moreover, in multiple-defendant cases, the seventy-day clock starts to run on the date that the last co-defendant makes his initial appearance. *Coviello v. United States*, 287 F. App'x 503, 506-07 (6th Cir. 2008).

If a defendant is not brought to trial within 70 non-excludable days, the "indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). This dismissal may be either with or without prejudice depending on the Court's consideration of three non-exclusive factors: "[1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." *Id.*

---

[2]In October 2008 this section was renumbered § 3161(h)(6).

The original indictment against petitioner and 17 co-defendants was filed on March 15, 2006. (Court File No. 1, Sealed Indictment). Petitioner made his initial appearance on March 23, 2006. (Court File No. 23, Minute Entry). However, the last of the co-defendants, Roy Hargrove, made his initial appearance on May 1, 2006. (Court File No. 138, Minute Entry). The 70-day clock began to run on that date as to petitioner and his co-defendants. However, several co-defendants had filed motions by that date.

Co-defendant Eric Anderson had filed a motion for a bill of particulars on April 24, 2006 (Court File No. 123, Motion), which was not resolved until May 19, 2006. (Court File No. 156, Order denying Motion for Bill of Particulars). In the meantime, a motion to marry co-defendant Juan Valentin was filed on May 8, 2006 (Court File No. 151, Motion), which was not resolved until June 6, 2006. (Court File No. 163, Order denying Motion to Marry). On that date, co-defendant Jeremy Marion filed a motion to return court-ordered payment of funds (Court File No. 162, Motion); the government filed its response to the motion on July 17, 2006 (Court File No. 197, Response), and the Court denied the motion on July 17, 2006. (Court File No. 198, Order). Thus the time between May 1, 2006, and up to and including July 17, 2006 was excluded; the 70-day clock therefore began to run on July 18, 2006.

On July 28, 2006, petitioner's attorney moved to withdraw based upon a conflict of interest (Court File No. 206, Motion), and the 70-day clock stopped running after it had run for ten days. The Court granted the motion to withdraw on August 3, 2006. (Court File No. 213, Order). In the meantime, co-defendant Rex Nunley filed a motion for permission to marry (Court File No. 212, Motion), which was not resolved until August 16, 2006 (Court

7

File No. 219, Order granting Motion for Permission to Marry), at which time the 70-day clock commenced running again on August 17, 2006.

After the clock had run for another seven days, co-defendant Nunley on August 24, 2006, filed a notice of his intent to plead guilty. (Court File No. 222, Notice). This stopped the running of the speedy-trial clock. *See Coviello*, 287 F. App'x at 507 ("We also consider a notice of change of plea as a motion requiring hearing and, as a result, the time from the filing of the notice of hearing through the conclusion of the plea hearing is excludable.") (internal quotations omitted).

The hearing on co-defendant Nunley's change of plea was held on September 27, 2006. (Court File No. 277, Minute Entry). In the meantime, however, petitioner filed a motion in limine and/or motion to suppress on September 26, 2006 (Court File No. 245, Motion), which was not resolved on September 29, 2006 (Court File No. 287, Memorandum and Order granting in part and denying in part motion in limine), at which time the 70-day clock commenced running again on September 30, 2006.

Petitioner's trial began on October 2, 2006, after two days of non-excludable time had passed. Based upon the foregoing, only 19 days of non-excludable delay passed between the date of the last co-defendant's initial appearance and the commencement of petitioner's trial. The Court specifically finds that the delay caused by the co-defendants' need to litigate pretrial motions to be reasonable and therefore attributable to the petitioner. Accordingly, there was no violation of the Speedy Trial Act, and counsel was not ineffective in failing to move to dismiss based upon a violation of the Act. *See United States v. Hanley*, 906 F.2d

8

1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

**2.    Actual conflict of counsel.**

Petitioner alleges his first attorney, Lee Davis, rendered ineffective assistance of counsel by operating under a conflict of interest. Attorneys Lee Davis and Susanne Lodico were appointed to represent petitioner at his initial appearance. (Court File No. 23, Minute Entry). On July 28, 2006, petitioner's attorney moved to withdraw based upon a conflict of interest, stating the following:

> [C]ounsel would show that a potential conflict exists because Mr. Davis' law partner, Bryan Hoss, represented Steven Cook, an associate of the Defendant, who pled guilty to drug charges earlier this year. Due to the fact that Mr. Robinson's jury trial will proceed, counsel expects that an actual conflict will arise at that time.

(Court File No. 206, Motion to Withdraw, p. 1). The motion was granted on August 3, 2006, and attorney Graham Swafford was substituted as court-appointed counsel. (Court File No. 213, Order).

Petitioner contends that Mr. Davis failed to inform the Court that Mr. Hoss continued to represent Steven Cook until after the hearing on the Rule 35 motion filed by the government as to Mr. Cook's cooperation in petitioner's case. According to petitioner, Mr. Cook was cooperating against petitioner's co-defendants Allison and Valentin, both of whom ended up testifying against petitioner. He argues that this conflict denied him the effective assistance of counsel during plea negotiations.

9

"The guarantee of effective assistance of counsel includes representation which is free of conflicts of interest." *McNeal v. United States*, 17 F. App'x 258, 261 (6th Cir. 2001). To state a claim of ineffective assistance of counsel based upon a conflict of interest, petitioner must demonstrate "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)). An actual conflict will not be found unless a petitioner can identify "specific instances in the record to suggest an actual conflict or impairment of [his] interests." *United States v. Hall*, 200 F.3d 962, 965–66 (6th Cir. 2000) (internal quotation omitted). In order to establish an actual conflict of interest, a defendant must show that counsel "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *McFarland v. Yukins*, 356 F.3d 688, 705 (6th Cir. 2004) (internal quotation omitted).

Petitioner contends that his attorney could not counsel petitioner to plead guilty because that would have caused his partner's client to lose the ability to reduce his sentence through substantial assistance. There is nothing in the record, however, to support this hypothesis. "This Circuit has been quite rigorous in demanding more than omission of a hypothetical or 'potential' defense to establish adverse effect." *Id.* at 706 (citations omitted). To the contrary, upon recognizing the conflict, Mr. Davis filed a motion to withdraw as he was required to do. This claim of ineffective assistance of counsel lacks merit.

**3.     Failure to argue that the wiretap order was obtained in violation of the Fourth Amendment.**

Petitioner alleges the recordings of telephone conversations between him and co-defendant Valentin violated his rights under the Fourth Amendment because they were not properly authorized and thus counsel should have challenged the admissibility of the recordings. According to petitioner, the wiretap applications were not authorized by the U.S. Attorney General or a specially designated Assistant Attorney General as required by statute. This claim lacks merit.

The pertinent statute provides, in relevant part, that an application for a wiretap may be authorized by "[t]he Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General." 18 U.S.C.A. § 2516(1) (footnote omitted).

At the time the United States submitted its Application for Order Authorizing Interception of Wire Communications in this case, the United States also submitted an approval Memorandum signed by then-Deputy Assistant Attorney General Mary Lee Warren on March 16, 2005, along with a Memorandum from then-Attorney General Alberto Gonzales dated February 24, 2005, authorizing a Deputy Assistant Attorney General to approve such applications. (Criminal Action No. 1:05-mc-20 (Sealed)).

Because the wiretap was properly authorized, counsel would have had no basis by which to challenge the recordings of petitioner's telephone conversations. Accordingly, counsel's failure to do so was not ineffective assistance of counsel.

**4.      Failure to advise petitioner of the benefits of pleading guilty.**

On September 26, 2006, pursuant to 21 U.S.C. § 851, the government filed its notice of intent to use prior convictions to enhance petitioner's sentence. (Court File No. 255, Notice). Petitioner claims had he "been properly advised as to the probable outcomes regarding a guilty plea versus proceeding to trial, he would have entered a guilty plea prior to September 26, 2006." (Court File No. 416, Memorandum in Support of Motion to Vacate, pp. 27-28). Petitioner argues that without the notice of intent, he would not have been subject to a mandatory life sentence and the Court would have been free to sentence him within his guideline range.

Petitioner also alleges that attorney Davis knew or should have known of petitioner's prior convictions but advised him that, based upon his health issues, he was facing a sentence of ten years if he went to trial, and that attorney Swafford also knew of his prior convictions. Petitioner claims neither attorney informed him of the benefits of pleading guilty prior to the filing of the § 851 notice and that, had he known he was facing a mandatory life sentence, he would have pleaded guilty.

Petitioner's allegations are contradicted in the record. In a motion to continue the plea deadline, attorney Davis stated "that the Defendant is facing a mandatory minimum of life and counsel would like additional time to discuss the options of a plea agreement versus a trial." (Court File No. 107, Motion). Clearly petitioner and his attorneys were aware of his prior convictions and the mandatory life sentence he was facing if convicted.

In order to satisfy the prejudice requirement of *Strickland*, in a case where a petitioner claims that his attorney was ineffective in counseling the petitioner to reject a plea agreement and go to trial, petitioner must demonstrate that absent counsel's error he would have pleaded

guilty. *See Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005). "A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty." *Id*. at 859 (citation omitted).

Petitioner cannot satisfy either prong of the *Strickland* standard on this claim. He was clearly aware that he was facing a mandatory minimum life sentence and chose to take his chances at trial. "[T]here is a significant difference between the consequences emanating from a decision to reject a plea agreement and not plead guilty and the decision to enter a guilty plea." *Johnson v. Duckworth*, 793 F.2d 898, 901 (7th Cir. 1986). "The rejection of a plea agreement, in most instances, will result in the defendant going to trial with all of the concomitant constitutional safeguards that are part and parcel of our judicial process." *Id*. at 900. This claim of ineffective assistance of counsel lacks merit.

**5.     Failure to seek a lesser included offense jury instruction.**

Petitioner alleges his attorney failed to pursue his request for a jury instruction on the lesser included offense of conspiracy to distribute cocaine without a drug quantity as set forth in 21 U.S.C. § 841(b)(1)(C). On direct appeal, petitioner argued "that the district court should have charged a violation of 21 U.S.C. § 841(b)(1)(C) (distribution of cocaine with no finding of a threshold quantity) as a lesser-included offense. By failing to do so, Robinson insists, the court deprived the jury of a 'third option' and presented them with an 'all-or-nothing choice.'" 547 F.3d at 640.

Because petitioner did not request such a jury charge, the appellate court reviewed the issue for "plain error." *Id*. The court then stated the appropriate standard of review. "Under the plain error standard, we may reverse if (1) there was error that (2) was plain, (3) affected a substantial right, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quoting *United States v. Martin*, 520 F.3d 656, 658 (6th Cir. 2008)) (internal quotation marks omitted). The court next noted:

> A criminal defendant is entitled to an instruction on a lesser-included-offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.

*Id*. (quoting *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001)) (internal quotation marks omitted).

The court then concluded that petitioner was not prejudiced by the failure to charge the jury on a lesser included offense:

> [T]he verdict form required the jury to determine beyond a reasonable doubt whether the threshold amounts of five kilograms or 500 grams were involved in the conspiracy. An answer of "No" to both of the quantity interrogatories necessarily would have meant that the jury did not find either of the threshold amounts. The verdict form thus provided a "third option" by allowing the jury to convict Robinson of a conspiracy that did not involve any particular quantity of cocaine.

*Id*. at 640-421.

As the Sixth Circuit observed, the jury was given the opportunity to find petitioner guilty of the lesser included offense under § 841(b)(1)(C). Accordingly, counsel was not ineffective in failing to request a jury instruction on a lesser included offense.

**6.     Failure to contest the validity of the prior felony convictions.**

As noted previously, the government gave notice of its intent to use prior convictions to enhance punishment and specifically referred to the following:

> Schedule II Drugs, Docket No. 8396, Franklin County, Tennessee, offense date on or about July 13, 1992, sentenced [sic] imposed on or about March 17, 1993, sentenced to four years, placed on community corrections.
>
> Schedule II Drugs, Docket No. 10109, Franklin County, Tennessee, offense date on or about September 6, 1994, sentenced [sic] imposed on or about March 12, 1995, sentenced to three years and six months.

(Court File No. 255, Notice filed September 26, 2006). Petitioner alleges his attorney should have challenged the use of these prior convictions to enhance his sentence because the prior convictions do not meet the criteria for a predicate offense under § 851.

Section 851(e), however, specifically provides that a defendant cannot challenge the validity of a prior conviction which occurred more than five years before the government's notice of enhancement. Because petitioner's prior convictions were more than five years old, there was no basis for counsel to have challenged the prior convictions and any challenge would have been time-barred. Accordingly, petitioner's attorney was not ineffective in failing to challenge his prior convictions.

Based upon the foregoing, petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*.

**B.     Motion to Amend**

Petitioner has filed a motion to amend the § 2255 motion to state an additional claim of ineffective assistance of counsel in that counsel made improper statements to the jury; a claim that the prosecutor made improper statements to the jury; and a claim that the wiretap

violated Title III of the Onmibus Crime Control and Safe Streets Act. For the following reasons, the motion to amend is time-barred and will be denied.

A federal prisoner has one year in which to file a § 2255 motion. The limitation period generally runs from the date on which the judgment of conviction becomes final. Petitioner's conviction became final on October 5, 2009, which was the date the Supreme Court denied his petition for writ of certiorari. Petitioner timely filed his original § 2255 motion on September 9, 2010. (Court File No. 415). Petitioner's motion to amend the § 2255 was filed on November 13, 2012. (Court File No. 453). The question, then, is whether the motion to amend is timely because it "relates back" to the original filing date.

"An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 640 (2005). *See also Oleson v. United States*, 27 F. App'x 566, 571, 2001 WL 1631828 *3 (6th Cir. December 14, 2001) ("Oleson's amendment does not escape the AEDPA statute of limitations by 'relating back' to previous claims -- Oleson's amendment raises an entirely new argument").

Petitioner's motion to amend raises new claims for relief which are unrelated to his original claims of ineffective assistance. His new allegations do not relate back to the original pleading, are time-barred, and will not be considered by the Court.

### C.  Motion for Modification of Sentence

Petitioner moves for a modification of his sentence, pursuant to 18 U.S.C. § 3582(c)(2), and claims that his life sentence for a drug conspiracy exceeded the Sentencing

16

Commission's authority under 28 U.S.C. § 994(h). Petitioner's life sentence was not the result of a guideline sentencing determination, however, but rather was the mandatory minimum term of imprisonment imposed by statute. Petitioner claim that he is entitled to a modification of his sentence lacks merit.

## IV. Conclusion

Petitioner's motion to amend (Court File No. 452) will be **DENIED**. Petitioner is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. Petitioner's motion for modification of his sentence (Court File No. 469) will be **DENIED**. This action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**An Order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**